UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

Court Minutes and Order

DATE: June 20, 2016
JUDGE: Pamela Pepper
CASE NO: 2009-cr-222
CASE NAME: United States of America v. Jason M. Ludke, also known as Muhammad Abdun Naasir
NATURE OF HEARING: Revocation of Supervised Release
Defendant's Motion for Modification of Supervised Release
APPEARANCES: Thomas Phillip – Attorney for the defendant
Jason M. Ludke/Muhammad Abdun Naasir – Defendant
Melvin Washington – Attorney for the government
Brian Koehler -US Probation
COURTROOM DEPUTY: Kristine Wrobel
TIME: 11:11 a.m. – 12:01 p.m.

The court scheduled this hearing because the probation office filed a petition recommending revocation of the defendant's supervised release. The court also noted that the defendant had filed a *pro se* motion alleging that his probation officer had denied him his First Amendment right to practice his religion, by refusing to allow him to attend congregational prayers (it was not clear whether the defendant was alleging that he should be allowed to attend congregational prayers for all five prayers all seven days of the week, or just the Friday prayers). (Dkt. No. 99.)

The court confirmed that all counsel had reviewed the revocation report, as well as the defendant's *pro se* motion to modify the conditions of supervision. The court enquired whether the defendant contested the violations (alleging that he had not returned to the Brown County Huber Facility until over twelve hours after a work shift was canceled; that he had quit his job without informing his probation officer; that he had been missing from the Brown County Huber Facility between May 1, 2016 and May 12, 2016, and had not notified his supervising agent regarding his whereabouts; and that he had not, as required by law, reported his change in address and location under the requirements of the sex offender registry law). Counsel for the defendant informed the court that the defendant indicated that the defendant stipulated to the first four violations. Counsel told the court, however, that he could not, on the defendant's behalf, stipulate to the fifth violation (the defendant's failure to update his sex offender registration with the Wisconsin Department of Corrections for the time period between May 1, 2016 to May 12, 2016), because to do so could subject him to criminal prosecution. Counsel opined, however, that the court could take the allegations into account when making its determination regarding whether to revoke, if so, what sentence to impose.

1

The parties all agreed that the highest level of violation was Grade C violations, and that the defendant's criminal history was Category VI. Grade C violations in criminal history category VI yielded an advisory sentencing range of eight to fourteen months; no parties objected to this calculations.

Counsel for the government asked the court to hold off making a finding on the fifth violation. Counsel stated that while he understood why counsel for the defendant would not stipulate to the alleged facts supporting that violation, it was quite possible that the state or the federal government might conclude that the facts supported a criminal charge. If that were to be the case, counsel noted, the time might come where it would be necessary for the court to rule on that violation. Counsel argued that the court and everyone in the courtroom was aware of the need for sex offenders to register and have the state, along with probation, know their whereabouts. With regard to the four stipulated violations, and the other relevant conduct, counsel recommended that the court revoke the defendant's supervised release and impose a period of incarceration within the guidelines range. Counsel expressed concern about the fact that the defendant had been missing from the residential reentry facility (the Brown County Jail's Huber facility) for twelve days, and that to this day, no one knew where he had been or what he'd been doing during that time. Counsel told the court that it might take time for the investigating authorities to determine what he'd been doing during that period, and whether he'd committed any offenses or further supervised release violations. Counsel also argued that it was cold comfort to the victims of the offense of conviction to learn that the defendant had been housed in a facility that would just allow him to walk away, untracked and unmonitored. Counsel argued that revocation, followed by a sentence of incarceration within the advisory range, was necessary to send home to the defendant the serious nature of these violations.

Counsel for the defendant proposed that the court either revoke the defendant and impose a term of time served, followed by a period of supervised release, or decline to revoke at this time and continue the defendant on the current term of supervised release. Either way, counsel asked the court to include as a new condition of supervised release the requirement that the defendant spend up to 180 days in a residential reentry facility that was *not* the Brown County Jail. Counsel argued that incarceration would not solve the defendant's two biggest problems. The first was that he had no patience—he became frustrated with his situation, and acted out in ways that were bad for him and bad for others. The second was that, due to the requirement that he register as a sex offender and that he comply with state and local laws and ordinances governing where registered sex offenders could live, he thus far had been unable to find a place to live. Counsel stated that only the defendant

2

could solve his impatience and impulse control problems. He also told the court that he understood—and had tried to explain to the defendant more than once—that probation could not approve a residence for the defendant which probation knew would violate a state or local ordinance; not only would that be setting the defendant up to fail, but it would end up harming the defendant, given that he'd likely be arrested shortly after he moved. Counsel argued that the defendant had not had consistent family support. Counsel also argued that it was pretty hard for the defendant to be released from prison, not into a regular halfway house as most defendants were, but into a county jail (a much more restrictive environment). Counsel disagreed with the government that the court should assume that the defendant had committed unknown violations or crimes during the twelve days he was missing from the Huber facility, given that, to date, there was no evidence he'd done either.

The probation officer told the court (in answer to its question) that if the court ordered that the defendant spend 180 days in a residential reentry facility that was not the Brown County Jail, Rock Valley Community Programs, Inc. would be where the defendant would be placed. The probation officer told the court that he couldn't say for sure how long it would take to transfer the defendant; that would depend on when Rock Valley had a vacancy. The probation officer assured the court, however, that if the court ordered placement at Rock Valley, that he would work on that today.

The defendant explained that he had had time to reflect on his actions. He told the court that he would get himself on the right path, but then would become impatient, which would cause him to make bad decisions. The defendant indicated that he wanted to get a job and to participate in a cognitive intervention program to help him make better decisions when he gets impatient. He also stated that he wanted to get away from Green Bay; he felt that community was not healthy for him, or supportive spiritually. The defendant told the court that he did not want to lash out anymore.

The court told the defendant that the record demonstrated exactly the pattern that the defendant had described; he would get impatient, blow up, and make decisions that threatened others and hurt him. The court stated that it understood that the defendant was frustrated about how hard it was for him to find a place to live, but indicated that lashing out only made things worse. The court explained that both his attorney and probation were trying to work through the state statutes and the city ordinances to help him find a place to live, but that given his situation, it was going to take time. The court noted that even though the defendant had a history of frustrating others (like his probation officer), there were still people who wanted to help him. The court said that it wanted to give him an opportunity to get on the right track, but more to the point, at some point there was going to have to be somewhere that

3

the defendant could live, because the court was not going to keep the defendant locked in jail forever.

The court denied the request to revoke the defendant's supervised release today. The court modified the conditions of the defendant's supervised release, to include a condition that he spend up to 180 days in the Rock Valley Community Programs, Inc. facility; that he could not leave the state of Wisconsin without the permission of his supervising officer; and that he must truthfully answer all questions of his supervising officer, subject to his Fifth Amendment rights.

The court then addressed the defendant's *pro se* motion to modify the supervised release conditions to allow him to attend congregational prayers. The court noted that while it was by no means an expert in Islamic law or practice, it did not understand the Q'uran to mandate that one pray all prayers in congregation. The court stated that it understood that one could pray alone if circumstances required it. The court also noted that the probation officer had made arrangements on more than one occasion for the defendant to attend Friday congregational prayers at a mosque. When the court enquired of defense counsel whether its understanding was correct, defense counsel told the court that the defendant wished to withdraw his motion to modify, given the court's decision to allow him to be placed in the Rock Valley halfway house. Counsel stated that this less restrictive environment ought to allow the defendant more flexibility in his teaching and practice. The court granted the defendant's oral request to withdraw the motion.

Counsel for the government noted that at the preliminary hearing after the defendant was arrested on the revocation warrant, there had been extensive argument on whether the "up to 180 days" language allowed the defendant to decide when he believed he'd been in the halfway house long enough. The court responded that the only person with the authority to determine whether the defendant could move from the halfway house to a residence in the community prior to the expiration of the 180 days was the supervising agent. If the defendant were to leave Rock Valley without that facility or the supervising agent's permission, the court said, the probation officer and the government should immediately request action from this court. The court noted that if the 180 days expired without probation having found an acceptable residence for the defendant, the parties would return to the court to determine what next steps to take.

Counsel for the government also asked the court to reconsider the decision not to confine the defendant's movements to a single judicial district. The court stated that it understood counsel's concerns, but that probation was doing its best to find the appropriate place for the defendant, and the court didn't know

4

how to design a condition that would say that the defendant could be placed in a halfway house outside the district (if that turned out to be the case), or in a residence outside the district (if that turned out to be the case), but couldn't travel within that other district. The court stood by its decision to modify the defendant's conditions to state that he could not leave the *state* without the permission of his supervising officer.

The court ordered that the defendant remain in custody until probation is able to work out the arrangements to move the defendant to the Rock Valley Community Programs, Inc. Transitional Housing facility.

The court **DENIES** the request to revoke the defendant's supervised release at this time. The court makes no finding on whether the defendant did or did not commit Violation No. 5. The court **ORDERS** that the defendant's conditions of supervised release are modified as follows:

1. The defendant shall reside up to 180 days in the Rock Valley Community Programs, Inc. Transitional Housing facility. The defendant will not move from that facility unless and until he has authorization and approval from his supervising probation officer to transition into an independent residence. If the defendant moves (or is absent without authorization) from the Rock Valley Community Programs, Inc. Transitional Housing facility, the probation office shall immediately notify the government and the court.
2. The defendant shall not leave the state of Wisconsin without permission from his supervising probation officer or the court.
3. The defendant shall answer truthfully all inquiries by the probation officer subject to his Fifth Amendment right against self-incrimination and follow the instructions of the probation officer.
4. All the remaining terms of supervised release remain in effect.

The court **DENIES AS MOOT** the defendant's motion to modify the terms of his supervised release. Dkt. No. 99.

Dated in Milwaukee, Wisconsin this 21st day of June, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge

5

Case 2:09-cr-00222-LA    Filed 06/20/16    Page 5 of 5    Document 102